UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **LIBRADO O. VALADEZ and** | ) | |
| **ALICIA VALADEZ,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No.  SA-13-CA-271-XR** |
| | ) | |
| **BANK OF AMERICA, NATIONAL** | ) | |
| **ASSOCIATION and FEDERAL** | ) | |
| **NATIONAL MORTGAGE** | ) | |
| **ASSOCIATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

On this day the Court considered Plaintiffs' motion to abstain and remand pursuant to 28

U.S.C. § 1447(c) (Docket No. 7) and Defendants' Response (Docket No. 11). For the following

reasons, the Court DENIES Plaintiffs' motion to remand.

**BACKGROUND**

In this case, Plaintiffs Librado O. Valadez and Alicia Valadez allege various causes of action

for violations of the Deceptive Trade Practices Act, common law and real estate fraud, and breach

of contract and ultimately seek to prevent the foreclosure and sale of their property by Bank of

America, National Association ("Bank of America") and Federal National Mortgage Association

("Fannie Mae"). *See* Plaintiffs' Original Petition ¶¶ 3-4, 18, 22, 24, 26, 27-30, 33, 37, 39.  Plaintiffs

own property located at 113 Wheeler St., Stockdale, Texas 78160. *Id* ¶ 14. Prior to December 6,

2012, Plaintiffs and Defendant Bank of America were in the process of modifying the Plaintiffs' loan

-1-

agreement. *Id* ¶ 15. On December 6, 2012, Bank of America confirmed receipt of the paperwork necessary to complete the loan modification. *Id*. On December 4, 2012, however, Bank of America foreclosed on Plaintiffs' property and sold it at a foreclosure sale where Plaintiffs allege that Fannie Mae became the servicer of the mortgage. *Id.* ¶ 16. On December 21, 2012, Fannie Mae filed a Petition for Forcible Detainer of the property. That petition was issued and served on Plaintiffs on December 27, 2012. *Id.* ¶ 17.

Plaintiffs filed their original petition on January 16, 2013 in the 81st Judicial District Court of Wilson County, Texas. On April 3, 2013, Defendants removed the pending action to this Court under 28 U.S.C. § 1332. They argue that complete diversity of citizenship exists among the parties and that the amount in controversy exceeds $75,000. *See* Defendants' Notice of Removal at 1.

Plaintiffs filed a motion to remand contending that the amount in controversy does not exceed $75,000. They argue that the value of the property should not control the amount in controversy and that, even if the value of the property controls the amount in controversy, the property's real value is less than $75,000. *See* Plaintiffs' Motion to Abstain and to Remand at 3. Defendants maintain in their notice of removal that the value of the property controls the amount in controversy and that, because the property is valued by Wilson County tax appraisers at $94,460.00, the amount in controversy is met. Defendants' Response to Plaintiffs' Motion to Remand ¶ 10-11.

## LEGAL STANDARD

A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction. *See* 28 U.S.C. § 1441(a). On a motion to remand, the court must consider whether removal was proper. Removal is proper in any case in

which the federal court would have had original jurisdiction. *Id*. To determine whether jurisdiction is present for removal, the Court considers the claims in the state court petition as they existed at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir.1995). The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). Any ambiguities are to be construed against removal as the removal statute should be strictly construed in favor of remand. *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

Under 28 U.S.C. § 1332, a federal court has jurisdiction over controversies involving disputes between citizens of different states where the amount in controversy exceeds $75,000. Courts ordinarily consult the state court petition to determine the amount in controversy. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). Where, as here, the petition does not include a specific monetary demand, the defendant must establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See De Aguilar*, 47 F.3d at 1412. This requirement is met if (1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or (2) the defendant sets forth "summary judgment type evidence" of facts in controversy that support a finding of the requisite amount. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

## ANALYSIS

At issue is whether the amount in controversy satisfies the jurisdictional requirement of 28 U.S.C. § 1332. Because the original pleadings do not specify an amount in controversy, Defendants must show by a preponderance of the evidence that the amount in controversy exceeds $75,000.

Defendants contend that the amount in controversy is equivalent to Wilson County's $94,460 appraised valuation of the property. Plaintiffs argue that Defendants have not established that the amount in controversy requirement is satisfied for two reasons. First, Plaintiffs argue that the valuation of the property should be the $94,460 appraisal less the $60,000 that Plaintiffs still owe on the property–or, $34,460, far less than the $75,000 that § 1332 demands. Second, they contend that, even if the value of the property controls the amount in controversy, the property's real value is only $50,000 because it has numerous defects. Neither of Plaintiffs' arguments is tenable.

### a. The Value of the Property Controls the Amount in Controversy.

In an action for declaratory or injunctive relief, the amount in controversy for jurisdictional purposes is measured by the "value of the right to be protected or the extent of the injury to be prevented." *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983). "[W]hen the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy." *Waller v. Professional Ins. Corp.*, 296 F.2d 545, 547-48 (5th Cir. 1961). The Fifth Circuit has interpreted the holding in *Waller* to apply to cases involving property foreclosures. *See Nationstar Mortg. LLC v. Knox*, 351 Fed. Appx. 844, 848 (5th Cir. 2009). The majority of federal district courts in the Fifth Circuit have held that the amount in controversy in suits seeking to set aside or prevent foreclosure is the value of the property. *See, e.g.*, *McDonald v. Deutsche Bank Nat. Trust Co.*, 3:11-CV-2691-B, 2011 WL 6396628 (N.D. Tex. Dec. 20, 2011) (holding that a request for an injunction to enjoin a foreclosure "calls into question the right to the property in its entirety and the amount in controversy is equal to the value of the property"); *Martinez v. BAC Home Loans Servicing, LP*, 777 F. Supp. 2d 1039, 1047-48 (W.D. Tex. 2010) ("[T]he value

of the property is the object of the litigation for the purposes of determining whether the amount-in-controversy requirement has been met so long as the plaintiff is seeking injunctive relief to prevent or undo the lender's sale of the property."); *Berry v. Chase Home Finance, LLC*, No. C-09-116, 2009 WL 2868224, at *3 (S.D. Tex. Aug. 27, 2009) (holding that the value of declaratoy and injunctive relief is the current appraised fair market value of the property, because "[a]bsent judicial relief, Plaintiff could be divested of all right, title and interest to the Property").[1]

In their petition, Plaintiffs seek to set aside the foreclosure sale of the property for failure to provide proper notice. Although Plaintiffs claim in their motion to remand that they are seeking only economic damages, *see* Plaintiffs' Motion to Abstain and to Remand at 1, the Original Petition, which controls this Court's assessment of jurisdiction, clearly asks "the Court to set aside the foreclosure sale, thus voiding the sale to Defendant's Fannie Mae." Plaintiff's Original Petition ¶¶ 27-37. Thus, because Plaintiffs are calling into question the right to own the property, the value of the property determines the amount in controversy.

**b. Defendants Have Established by a Preponderance of the Evidence that the Property's Value Exceeds $75,000**.

The next issue the Court must resolve is how to value the property. Defendants provide Wilson County Tax Appraisal District records that show Plaintiffs' property has been valued at over $90,000 since 2009 and has a current taxable value of $94,460 dollars. This Court has relied on county tax assessors' appraisals to determine the value of property in similar cases. *See, e.g., Zavala*

---

[1] *But see Ballew v. America's Servicing Co.*, No. 4:11-CV-030-A, 2011 WL 880135 (N.D. Tex. Mar. 14, 2011) (holding that *Waller* was factually distinguishable and that the amount in controversy was *not* the value of the property itself where the plaintiff sought to enjoin a foreclosure sale).

*v. M & T Trust Company*, No. SA–11–CV–956–XR, 2011 WL 6739614, at \*2 (W.D. Tex. Dec. 22, 2011). The Wilson County appraisal records constitute evidence that the property is worth more than $75,000.

Plaintiffs contend that the Wilson County appraisal of their property should not determine the value of the property and that the value of the property is actually much lower than $75,000. In support of their argument, Plaintiffs provide the declaration of Juanita Valadez, who claims to have full power of attorney for her father-in-law, Plaintiff Librado Valadez. Plaintiffs' Motion to Abstain and to Remand, Exhibit A.[2] In her declaration, Juanita Valadez indicates that the property has serious problems that the Wilson County appraisal fails to take into account. For example, she testifies that the property has significant foundation problems, cracked sheetrock throughout the house, warped floors, exposed wood, water intrusion issues, and several other conditions that exist in the back of the house that are not visible from the street.[3] She opines that the property is worth no more than $50,000.

Juanita Valadez's testimony and pictures, however, fail to show that the property is worth less than $75,000 dollars. Juanita Valadez has not provided specific estimates demonstrating how the purported defects diminish the property's value and does not explain why the defects render the Wilson County appraisal inaccurate. Furthermore, although Juanita Valadez states that she is "familiar with the property values of real estate in Stockdale," *see id.,* she does not indicate any credentials establishing that she is competent to correctly assess property values. In their motion to remand, Plaintiffs cite *Speedy Stop Food Stores v. Reid Rd. Mun. Utilities*, 282 S.W.3d 652, 657-58

---

[2]Although the declaration is titled "Declaration of Plaintiff Alicia Valadez," the declaration is signed by Juanita Valadez and nothing in the record indicates that Juanita Valadez and Alicia Valadez are the same person.

[3]Pictures of the property's defects are attached to Juanita Valadez's declaration.

(Tex. App.–Houston [14th Dist.] 2009) for the proposition that they are qualified to testify about the value of their property. However, for at least two reasons, *Speedy Stop* does not suggest that Juanita Valadez's testimony is sufficient to show that the value of the property falls below $75,000. First, *Speedy Shop* does not suggest that a property owner's valuation of property should necessarily be dispositive. Rather, *Speedy Shop* only suggests that a property owner's testimony may be admissible to constitute some evidence of the property's value so long as the property owner shows that she is familiar with the market value of the property. Second, underlying the *Speedy Shop* court's holding that certain property owners can testify as to the value of their property was the court's reasoning that "owners of real property must pay property taxes each year based on the market value of their property" and that "[o]wners can, and many do, challenge the valuation of their property as not reflecting market value." *Id.* at 658  n.4. Here, Plaintiffs have known that the County has been valuing their property at over $90,000, nearly double the $50,000 that they now maintain the property is worth, and have paid taxes based on that valuation for several years. There is no evidence that Plaintiffs ever challenged the County's valuation, which suggests that they acceded to that valuation.

Moreover, even if the property were worth slightly less than $75,000, Plaintiffs seek mental anguish damages and attorney's fees which more than make up for the difference. *See Berry*, 2009 WL 2868224, at *3 (holding that where the plaintiffs asserted physical, emotional, and financial damages associated with a foreclosure of their home, plus entitlement to punitive damages and attorney's fees, the defendants had shown more likely than not that the amount in controversy exceeded $75,000). Accordingly, the Court finds that Defendants have demonstrated by a preponderance of the evidence that the amount in controversy exceeds $75,000. This Court therefore

has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 and removal was appropriate subject to 28 U.S.C. § 1441(a).

## CONCLUSION

Plaintiffs' Motion to Abstain and to Remand (Docket No. 7) is DENIED.

It is so ORDERED.

SIGNED this 11th day of July, 2013.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE